IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JUDITH TRACKWELL, | ) | Case No. 4:05CV3171 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| B & J PARTNERSHIP, LTD., | ) | |
| CLAY F. SMITH, WILLIAM D. | ) | |
| SMITH, A. JOYCE SMITH, | ) | |
| HOMESERVICES OF NEBRASKA, | ) | |
| INC., and CAPITOL TITLE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Pending before me is the "Motion to Vacate Order Pursuant to F.R.C.P 60" (filing 86 (sealed)).[1]  The motion claims that "there existed a conflict of interest on the part of judicial staff" while another motion was under consideration by Judge Piester.

The motion was submitted by Mary C. Wickenkamp (Wickenkamp), a former lawyer for the plaintiff, Judith Trackwell (Trackwell).  Essentially, the motion claims that Judge Piester's law clerk had a conflict of interest during the time the judge was considering a motion that called into question Wickenkamp's conduct.  In the penultimate paragraph of Wickenkamp's brief, she states: "Movant contends that, due to the involvement of Ms. Zwart [Judge Piester's law clerk] as part of her duties on the court staff during the pendency of the Motion herein, that the Court's order of March

---

[1]While the motion, and certain other filings pertinent to the motion, have been sealed at the request or direction of others, the interests of justice now require that this matter be resolved in a transparent fashion.  Accordingly, this memorandum and order will not be sealed and I will quote from the sealed filings.  Any subsequent filings related to this decision shall be filed publicly unless a judge gives prior leave to file something under seal.

31, 2006 [sic][2] must be vacated as violative of the Due Process rights of Wickenkamp."
(Filing 87.)

The alleged conflict of interest arose because of a legal malpractice suit filed by Wickenkamp several years ago.  That suit was filed on behalf of a party unrelated to this case.  It was brought against a group of lawyers.  One of those lawyers is married to Judge Piester's law clerk.   The malpractice case was not pending at any time relevant to this case.   On the contrary, it was filed in 1997 and dismissed with prejudice in 1999.

 Judge Piester has referred Ms. Wickenkamp's motion to me.   After careful review, I now deny it.  Indeed, I find that Ms. Wickenkamp's motion is groundless. Furthermore, it represents yet another example of her improper conduct.

## I. DISCLOSURE

Federal ethical rules generally advise a judge not to disclose the ordinary incidents of his or her daily life to the parties or their lawyers because those activities do not serve as a basis for disqualification and because overly cautious disclosures serve only to muddy the waters.   For reasons that will become apparent, this case proves the exception to the general rule.

I herewith disclose that on or about May 1, 1998, my wife and I bought our present residence from D. William Smith and Alice Joyce Smith.  The warranty deed, bearing number 1998021277, is described at http://deeds.lincoln.ne.gov (under "Public Login").  Given the similarity in names, I assume that the William D. Smith and A. Joyce Smith , two of the defendants in this case, are the same people who sold us our

---

[2]The actual date of the ruling was March 30, 2006.  (Filing 81.)

home.  Despite that assumption, and to the best of my recollection, I have never met with, or spoken to, Mr. or Mrs. Smith.

The purchase and sale of the home was at "arms length."  Our financing was through a bank.  The name of that bank is publicly available.  Id. (under "related documents," see 1998 deed of trust).  Facts relevant to the value of the home, including the purchase price ($269,000), are also publicly available and may be easily obtained at http://orion.lancaster.ne.gov/Appraisal/PublicAccess/PropertyDetail.

My wife and I dealt with a real estate broker (whose name I cannot recall) acting on behalf of the sellers when negotiating the sale.  The sale was in the ordinary course of business and involved no disputes.  Following the closing, which was handled by Nebraska Title Company, we had no disputes with the sellers.

As is the typical practice, we bought a title insurance policy.  The policy was purchased through Nebraska Title Company and issued by Ticor Title Insurance Company, a large national company.   The one-time premium was paid at closing.  So far as I know, the title insurance policy is in regular form and not unusual.  There have been no claims on, or disputes regarding, the policy.

I have studied the relevant statutes, the ethical code applicable to federal judges, and related materials.  See 28 U.S.C. § 144 (pertaining to disqualification for bias or prejudice when shown by affidavit of a party); 28 U.S.C. § 455 (requiring recusal by a judge on his or her own motion under certain circumstances); Volume II, Guide to Judiciary Policies and Procedures Chaps. 1, 4-6 (revised May 31, 2005) (collecting Code of Conduct for United States Judges, Published Advisory Opinions, & Compendium of Selected Opinions).[3]

---

[3]The Code of Conduct for United States Judges and the Published Advisory Opinions are also available over the Internet at www.uscourts.gov under the tabs

It is my opinion that the facts recounted above do not warrant or require my recusal or disqualification under any of the pertinent authorities. Furthermore, I believe it would be inappropriate for me to voluntarily withdraw from this case.

## II.  BACKGROUND

First, I lay out the facts and procedural history of this case up until the point Judge Piester ruled on the disqualification and sanctions motion directed at Wickenkamp. I then describe Judge Piester's ruling. After that, I describe Wickenkamp's subsequent challenge to the conduct of Judge Piester and his law clerk. Then I describe the pending motion and the affidavit and brief filed in support of it.

### The Prelude

This case began on July 18, 2005, when Wickenkamp, on behalf of Trackwell, filed a complaint, with a demand for a jury, against B & J Partnership, Ltd., Clay F. Smith, William D. Smith, and A. Joyce Smith. (Filing 1.) Essentially, the complaint alleged that because the defendants backed out of a commercial real estate deal in April of 2005, they violated federal antitrust laws. The defendants were alleged to be monopolists. It was also claimed that the conduct of the defendants rendered them liable to the plaintiff on various state-law theories of recovery (breach of the anti-monopoly provisions of state law, breach of contract, and tortious interference with a business relationship or expectancy). The plaintiff sought damages of approximately $7 million.

The case was assigned to Judge Piester and me. Following the normal practice, Judge Piester began to handle the management and progression of the case.

---

"Library" and "Manuals/Policy." The Code of Conduct for Judicial Employees, which pertains to law clerks, may be found there also.

An amended complaint was filed July 28, 2005 (filing 8), and then a second amended complaint was filed on July 29, 2005 (filing 9).  The second amended complaint added HomeServices of Nebraska, Inc., and Capitol Title Company as defendants, but continued to pursue the federal antitrust claim and the state-law theories.  Andrew Strotman (Strotman) entered his appearance for B & J Partnership, Clay F. Smith, William D. Smith, and A. Joyce Smith.  (Filing 11.)  Shannon Harner (Harner) entered her appearance for HomeServices of Nebraska, Inc.  (Filing 12.)[4]  On the motion of these parties, Judge Piester granted them extensions of time to answer. (Filings 15, 20.)

A third amend complaint (filing 17) was filed without leave of the court and was stricken by Judge Piester on August 10, 2005.  (Filing 21.)   Thereafter, a flurry of activity took place relating to the plaintiff's efforts to obtain leave to file a third amended complaint.[5]  (Filings 36-41.)

On November 9, 2005, Strotman and Harner, on behalf of their clients, filed a motion to disqualify Wickenkamp as a sanction.  (Filing 43.)  The motion also sought attorneys' fees and expenses for bringing the motion.  They supported the motion with a brief and evidentiary materials.  (Filings 44, 45.)  These filings were sealed because the defendants claimed that Wickenkamp had made defamatory statements against the defendants, their lawyers, and non-parties.  (Filings 42, 48.)

---

[4]The plaintiff claimed that Capitol Title was a wholly owned subsidiary of HomeServices.  It does not appear that Capitol Title was ever served.

[5]Among other things, the proposed third amended complaint sought to add more defendants and proposed to assert RICO claims.  (Filing 37 (Eighth and Ninth Causes of Action).)

The motion to disqualify Wickenkamp had two grounds: (1) because she had been involved in the transactions central to the plaintiff's claims, she would be a material witness and was thus disqualified; and (2) because Wickenkamp had engaged in a past pattern of bad faith and abusive misconduct in this case and related matters, disqualification was an appropriate sanction. (Filing 43.)

The defendants also continued to oppose the filing of a third amended complaint. With the filing of the disqualification motion, the answer deadlines for the second amended complaint were terminated pending resolution of the disqualification question. (See Docket Sheet, Clerk of Court's Entry of Dec. 22, 2005.)

Weeks turned into months as the lawyers prepared to further brief and argue the disqualification motion. Then, on February 3, 2006, Diane Celesky appeared to enter her appearance as co-counsel with Wickenkamp. (Filing 67.) Shortly thereafter, on February 8, 2006, Wickenkamp filed a motion for leave to withdraw. (Filing 71.)

On February 8, 2006, the Clerk of Court's office left a voice mail message with Wickenkamp regarding the entry of appearance of Diane Celesky. (See Docket Sheet, "Remark-Non-Public" dated Feb. 8, 2006.) Essentially, the Clerk's office believed that Wickenkamp had filed the appearance on behalf of Celesky using an "s/" signature for Celesky and the Clerk was concerned about the propriety of that filing. The Clerk also advised Celesky by a voice mail message that she would have to file her own appearance.

On February 10, 2006, Strotman and Harner filed a response to Wickenkamp's motion to withdraw. (Filing 72.) They stated that the defendants did not object to Wickenkamp's withdrawal, but her withdrawal would not moot the defendants' right to sanctions or attorneys' fees regarding the disqualification motion. Furthermore, Strotman and Harner stated that the defendants continued to oppose the motion to file

-6-

a third amended complaint because that complaint was frivolous and propounded in bad faith.

On February 16, 2006 (entered February 17, 2006), Judge Piester conditionally granted Wickenkamp's motion to withdraw effective upon the filing of evidence that the plaintiff had been notified of the court's ruling. (Filing 73.) He made it clear that granting the motion to withdraw "will not moot the defendant's request for attorney fees and costs related to filing the motion to disqualify." He also gave the plaintiff time to procure new counsel. Finally, he indicated that the motion regarding disqualification would be ripe for decision on February 24, 2006.

Wickenkamp filed a brief regarding the disqualification motion on February 24, 2006. (Filing 74.) On that same date she certified that she had notified her client of the provisions of Judge Piester's earlier ruling on her motion to withdraw. (Filing 75.)

On February 24, 2006, Harner and Strotman filed a motion requesting leave to provide copies of sealed filings to the Nebraska Supreme Court Office of the Counsel for Discipline. (Filing 76.) On March 2, 2006, Wickenkamp filed a response noting that she was no longer counsel for the plaintiff and indicating that "she has absolutely no objection to the matters filed under seal herein being provided to the Counsel For Discipline forthwith." (Filing 77.)

On March 17, 2006, Diane J. Celesky appeared as counsel for the plaintiff. (Filing 78.) The appearance was manually signed by Celesky. She did not refer to or explain the earlier entry of appearance that may have been filed by Wickenkamp using Celesky's "s/" signature. Celesky has filed no substantive motions or briefs since that time.[6]

_____

[6]Celesky moved to withdraw on April 3, 2006. (Filing 82.) She gave no explanation except to say that it was in her best interests and the best interests of

### *Judge Piester's Ruling on Disqualification and Sanctions*

On March 30, 2006, Judge Piester ruled on the motion to disqualify Wickenkamp and for sanctions. (Filing 81.) In the same opinion, he also ruled on the motion to provide copies of sealed filings to the Nebraska Supreme Court Office of the Counsel for Discipline.

In a 58-page opinion, Judge Piester found that "Wickenkamp has acted in bad faith and wantonly abused this court's processes for vindictive and oppressive reasons." (Filing 81, at 49.) Among other things, that misconduct, which took place both before and after filing this lawsuit, involved the failure to recognize that one of the defendants was represented by counsel, the filing of an unwarranted disciplinary complaint against a lawyer, making direct contact with a represented party, the circumvention of this court's discovery procedures through the use of state court proceedings, and the service of multiple harassing, threatening, and accusatory demands on the defendants. (Filing 81, at 56.)

Because Wickenkamp had withdrawn as counsel, Judge Piester ruled that the question of disqualification was moot. (Filing 89, at 57.) However, the judge also ruled that the defendants were entitled to attorney fees and expenses incurred in filing the motion. (Filing 89, at 57.) These fees and expenses were to be paid by Wickenkamp and not Trackwell. The judge set a timetable for determining the fee and expense issue. Judge Piester also granted the motion for leave to provide copies of the sealed pleadings to Nebraska's Counsel for Discipline. (Filing 89, at 57.)

---

Trackwell that she withdraw. Judge Piester conditionally granted the motion on June 15, 2006. (Filing 92.) In the same order, he also denied the motion to file a third amended complaint.

### *Wickenkamp Strikes Back*

On April 19, 2006, and before the process for determining the fees and expenses was complete, Wickenkamp sent Judge Piester a letter.   In pertinent part, the letter is reproduced below:

RE:   Trackwell v. B & J Partners, Miscellaneous Matters

Dear Magistrate Piester:

I note that this correspondence is designated 'Confidential' because it refers to matters proceeding under seal by order of this Court.

I write to make the Court aware of certain facts relative to matters presently pending under seal before the court.  Because of pending stays in those matters, neither I nor any party involved therein can file a formal motion regarding this matter.[7]   In any event, I believe that the Court should be aware of the facts set forth herein.

On March 31, 2006 I received an email from Law Clerk Cheryl Zwart relative to a decision reached by your office in a pending case in which I was involved.  From the context of our brief electronic communication it appeared that Ms. Zwart was involved in some fashion with the administration of this case.  Prior to March 31, 2006 I was unaware that Ms. Zwart was employed by your office or that she had any involvement with cases under consideration before you wherein I appeared as Counsel.

I believe that Ms. Zwart is effectively disqualified from any involvement in matters wherein I appear as Counsel or any matter involving me under Canon 2 of the Code of Conduct for Law Clerks (1994 ed.).  That Canon

---

[7]After Celesky filed her motion to withdraw, Judge Piester stayed the filing of substantive motions pending resolution of the attorney fee and expenses question and Celesky's motion to withdraw.  (Filings 82, 83.)

requires that a law clerk avoid impropriety and the appearance of impropriety in all activities.

The factual basis for this assertion is that I have previously sued Ms. Zwart's husband, David D. Zwart on behalf of one Larry Siebe. In late 1996 or early 1997 I filed a lawsuit against the law firm of Baylor, Evnen, Curtiss, Grimit and Witt, and its individual partners, including David D. Zwart. My understanding is that David D. Zwart is, and was at all times relevant here, the husband of Cheryl Zwart. The lawsuit was filed in Lancaster County District Court and was concluded in 1999. I enclose a copy of the order of dismissal. Judgments in District Courts in Nebraska automatically operate as a lien against real property. The records of the Lancaster County Register of Deeds reflect that Cheryl Zwart has owned property with David D. Zwart from 5/29/92 to the present. Thus the lawsuit against David D. Zwart in Lancaster County District Court would have necessarily impacted Ms. Zwart in a potentially negative manner because of her joint ownership of property with David D. Zwart.

Accordingly, I believe that Ms. Zwart's involvement as a law clerk in this case was and is in violation of the Code of Conduct for Law Clerks and, by inference, the Code of Judicial Conduct. See, e.g. Monument Builders of Pa. v. The Cath. Cem. Ass'n., Case. No,. (99-2030, Dec. 9, 1999, E.D. Pa.); Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860 (1988).

Respectfully Submitted,

s/ Mary C. Wickenkamp

cc    Andrew Strotman
      Shannon Harner
      Diane Celesky

-10-

(Filing 84, Att. 2 (typographical and punctuation errors in original).)[8]

### *Judge Piester's Response to Wickenkamp's Allegations*

Judge Piester treated Wickenkamp's letter as a motion to disqualify Ms. Zwart, and he denied it.  (Filing 84.)   On April 27, 2006, he decided that there was "no conflict of interest nor any appearance of impropriety in Ms. Zwart's continued involvement in these matters."   The judge attached to the opinion the affidavit of Ms. Zwart which was prepared at Judge Piester's request.   (Filing 84, Att. 3.)

Ms. Zwart's affidavit provided in pertinent part as follows:

> In response to the April 19, 2006 letter written by Mary C. Wickenkamp, Cheryl R. Zwart, being first duly sworn under oath, states as follows:

> 1.    The following facts are based on my personal knowledge.

>> a.    David D. Zwart is my husband and has been since May 25, 1979.

>> b.    In late May 1992, we purchased our current home at 6201 S. 46th Street in Lincoln, Nebraska, and have jointly owned the property ever since.  No judgment lien has ever been placed on this property or any other property in which I have, or have ever had, an ownership interest.

>> c.    My husband became an associate with the law firm of Baylor, Evnen, Curtiss, Grimit and Witt in September of

---

[8]Attached to the letter was a judgment of dismissal of the case referred to in her letter. (Filing 84, Att. 2 (attachment to letter).) The judgment, signed by a state district judge, indicates that the case was dismissed with prejudice and by agreement of the parties. It stated that "each party to pay own costs."  The judgment was dated October 12, 1999.

1992. He became a partner in that firm on January 1, 1998. He resigned from the partnership and became of counsel with that firm in June of 2004, and he is currently serving on active duty for the United States Air Force.

2. As I was reading Ms. Wickenkamp's April 19, 2006 letter, I could not recall that my husband was ever served with any lawsuit, including a lawsuit in the District Court of Lancaster County, Nebraska entitled <u>Seibe v. Baylor, Evnen, Curtiss, Grimit and Witt, et. al.</u>, Doc. 559, No. 46. I have therefore reviewed that case file and accompanying docket sheet at the office of the Clerk of the District Court of Lancaster County, Nebraska.

3. Upon review of the Lancaster County District Court files for <u>Seibe v. Baylor, Evnen, Curtiss, Grimit and Witt, et. al.</u>, Doc. 559, No. 46, I discovered:

a. The plaintiff's petition was filed on July 29, 1997. The named defendants were the Baylor, Evnen, Curtiss, Grimit and Witt law firm and ostensibly each of the individual partners of that firm. The petition alleged the partnership and each of the individual partners, including David D. Zwart, were liable for the alleged malpractice of attorney Scott Bercham, a former partner of that firm. Mr. Bercham and the Baylor, Evnen law firm allegedly agreed to represent the plaintiff in 1991, but failed to file a personal injury lawsuit on his behalf before the statute of limitations ran on January 2, 1994.

b. David D. Zwart was not a partner when the alleged malpractice occurred, and he was not a partner in the firm when the suit was filed. The petition does not state that he was personally involved in any of the allegedly negligent acts or omissions.

c. The lawsuit was never served on David D. Zwart, or any other individual partner of the Baylor Evnen law firm. Only

-12-

the partnership itself was served, and that service occurred January 14, 1998.

d.    Counsel for the firm filed a separate answer on behalf of David D. Zwart and Brenda S. Spilker (who also became a partner on January 1, 1998), alleging these named defendants were not partners at the relevant times at issue.

e.    On May 25, 1999, Ms. Wickenkamp filed a response to an order to show cause why the case should not be dismissed for want of prosecution, and the case was not dismissed at that time.

f.    The case was dismissed with prejudice on October 12, 1999.

4.    What I know about <u>Seibe v. Baylor, Evnen, Curtiss, Grimit and Witt, et. al.,</u> I learned from my review of the Lancaster County District Court's files on April 21, 2006.  This prior lawsuit against my husband has never financially impacted me (or him) in any way.  The lawsuit was apparently resolved over six years ago.  The filing of that suit by Ms. Wickenkamp has not in any way affected the manner in which I perform my responsibilities for the court.

FURTHER THE AFFIANT SAYETH NOT.

s/ Cheryl R. Zwart

SUBSCRIBED AND SWORN TO before me by Cheryl R. Zwart on this 24th day of April, 2006.

s/ Kathleen I. Sump
Notary Public

(Filing 84, Att. 2.)

-13-

### *The Pending Motion*

The motion that is now before me states in pertinent part as follows:

> Comes now, Mary C. Wickenkamp, Attorney and former counsel for Plaintiff moves this Court for an order vacating the order of this court on Defendants Motion to Recuse entered herein on or about March 30, 2006.  Said vacation is necessary under F.R.C.P. 60 for the reason that there existed a conflict of interest on the part of judicial staff while such Motion was under consideration by this court, such that the recusal of the Hon. David L. Piester in this matter is required.  Wickenkamp, as a party affected by that order, has standing to raise this challenge to said order.

(Filing 86 (typographical and punctuation errors in original).)

Wickenkamp filed an affidavit in support of the motion.  In that affidavit, Wickenkamp does not controvert any of the facts recounted in Zwart's affidavit. Rather, Wickenkamp states the following:

> Your affiant, Mary C. Wickenkamp, duly sworn and upon oath, states and avers as follows
>
> 1.      That I am an attorney licensed to engage in the practice of law in the State of Nebraska.  That this affidavit is made in support of the Motion of Mary C. Wickenkamp to vacate the order of March 30/31, 2006 entered in the above action by this court.  That all facts and statements contained herein are to the best of my information, knowledge and belief, true, accurate and genuine.
>
> 2.      That this motion is not made for any frivolous purpose, but out of a genuine concern that a judicial bias against me exists or, at the very least that there exists the appearance of impropriety in this case as regards the issue of judicial bias.  I note that this case was stayed shortly after it was provided to the parties on or about March 31, 2006 and that stay was ordered removed by the court on or about June 1, 2006.  That until March

-14-

31, 2006 I had no knowledge of Ms Zwart's involvement in this case. I learned of it by receipt of an email from her regarding the sealed order entered by the Court in this case on March 31, 2006. Immediately thereafter the case was stayed and I was prevented by such order from filing any motion therein.

3.     That from July 18, 2005 to approximately February 17, 2006 I served as counsel for Plaintiff in the above referenced matter.

4.     That in late 1996 or early 1997 I filed a legal malpractice lawsuit against the law firm of Baylor, Evenen, Curtiss, Grimit and Witt, and its individual partners, including David D. Zwart on behalf of one Larry E. Siebe. My understanding is and has been that at all times relevant hereto David D. Zwart is and was the husband of Cheryl Zwart who is and appears to have been at all times relevant here to a law clerk to the Hon. David L. Piester. That case was docketed on the Lancaster County Court Docket at Docket 559 No. 49 and was dismissed pursuant to the stipulation of the parties on October 12, 1999. The records of lthe Lancaster County Register of Deeds reflect that Cheryl Zwart has owned real property with David D. Zwart in Lancaster County from 05/29/92 to the present. The lawsuit against David D. Zwart in Lancaster County District Court would have necessarily posed a potentially negative impact on Ms. Zwart because of such co-ownership.

5.     In addition I note that the Court's March 31, 2006 order on the Motion to Recuse makes certain statements of fact regarding my conduct as to a case involving Judith Trackwell against Dwight Johnson, filed on this court's docket at CI: 04:02cv3085 and appears critical of those actions. I testified as a witness in that case. The notice of my deposition appears in the court docket, but I believe that there exists no other information regarding me in this court file. It is my understanding from Attorney Theresa Siglar that the case was settled by the parties and that it was done so pursuant to a stipulation of confidentiality which prohibited all parties thereto from discussing the case or matters relating thereto. The law firm representing the Defendants in that case was the

law firm of Baylor, Evenen, Curtiss, Grimit and Witt, of which Mr. David Zwart was and is a partner.[9]

6.      It is my belief that at the very least this situation raises a concern as to the appearance of impropriety requiring vacation of the court's order.

Further affiant sayeth not.

This declaration is made this day under penalty of perjury on this 8th day of June, 2006.

By: s/ Mary C. Wickenkamp

(Filing 86 (typographical and punctuation errors in original).)[10]

Wickenkamp filed a brief.  The brief is reproduced below:

Mary C. Wickenkamp, Attorney and former counsel for Plaintiff moves for an order vacating the Court's order entered in regard to the Defendants Motion to Recuse on or about March 30, 2006.  Said vacation is necessary under F.R.C.P. 60 for the reason that there existed a conflict of interest on the part of judicial staff while such Motion was under consideration by this court, such that the recusal of the Hon. David L. Piester in this matter is required.

Wickenkamp, as a party affected by that order, has standing to raise this challenge to said order.

---

[9]I do not understand the significance of this paragraph.  It is not mentioned in Wickenkamp's brief.

[10]For the reasons given later in the text of this opinion, I find that the affidavit is not "sufficient" within the meaning of 28 U.S.C. § 144.  It is probably not "timely" either, but I need not reach that question.

The conflict exists to the extent that Cheryl Zwart, a judicial lawclerk was a member of the Court staff at all times during the pendency of this matter. As set forth in the Affidavit of Mary C. Wickenkamp, Wickenkamp had previously sued Zwart's husband and his law partners in a legal malpractice action filed in Lancaster County District Court. Such lawsuit had a direct and negative impact on Cheryl Zwart for the reason that Zwart was the owner of real property with her spouse. Under Nebraska law judgments in Lancaster County District Court are automatically treated as liens against real property owned by Defendants. Hence, the filing of the malpractice lawsuit had the practical effect of creating a lien on real property owned by Cheryl Zwart.

Movant submits that judicial law clerks are bound by the Code of Conduct for Law Clerks, and by inference, the Code of Judicial Conduct. See, e.g. Monument Buildings of Pa. v. The Cath. Cem. Ass'n Case No. 99-2030, Dec. 9, 1999. E.D. Pa.,[11]; Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860 (1988).[12]

Movant contends that, due to the involvement of Ms. Zwart as part of her duties on the court staff during the pendency of the Motion herein, that the Court's order of March 31, 2006 must be vacated as violative of the Due Process rights of Wickenkamp.

---

[11]I think Wickenkamp intended to cite <u>Monument Builders of Pennsylvania, Inc. v. The Catholic Cemeteries Ass'n, Inc.</u>, 190 F.R.D. 164 (E. D. Pa. 1999) (former law clerk of judge who presided over antitrust class action was disqualified from representing plaintiff in subsequent action alleging breach of settlement agreements reached in first suit under Canon 2 of the Code of Conduct for Law Clerks and Code of Conduct for Judicial Employees, which provided that "a law clerk should avoid impropriety and the appearance of impropriety in all activities").

[12]<u>Liljeberg v. Health Services Acquisition Corp.</u>, 486 U.S. 847 (1988) (appearance of impropriety was shown requiring recusal where judge sat as trustee for university that had substantial interest in particular suit handled by that same judge even though university was not technically a party; after the judge resolved the litigation favorably to the university in a non-jury trial, judgment was set aside).

(Filing 87 (typographical and punctuation errors in original).)

### III.  ANALYSIS

Far too much time has already been taken up dealing with this case and Wickenkamp's improper behavior.  Thus, I now deny her motion with only two comments.

First, the disqualification allegation made against Zwart, and now Judge Piester, has no merit.  So far as I can tell,[13] the allegation is apparently made under broad language in ethical codes calling for federal judges and their law clerks to withdraw when their "impartiality might reasonably be questioned"[14] and a statute expressing that same sentiment.[15]  However, no reasonable person, who is informed on the facts, would perceive any lack of impartiality where (a) a law clerk works on a federal antitrust case, with state law claims, involving a failed commercial real estate transaction, (b) when the federal suit is filed by a lawyer (c) who is accused of unethical behavior in the federal case and (d) who eight years earlier filed a malpractice suit in state court against the law clerk's lawyer-husband and the members

---

[13]Wickenkamp does not provide a citation to the sections of the codes or statutes upon which she relies.  Thus, I must guess at her reasoning.  Moreover, the cases she cites have nothing to do with the scenario presented here and, consequently, they fail to illuminate Wickenkamp's thought processes.

[14]Code of Conduct for United States Judges, Canon 3, § C(1) ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."); Code of Conduct for Judicial Employees, Canons 2 & 3 § F(2)(a)(i) ("A Judicial Employee Should Avoid Impropriety and the Appearance of Impropriety in All Activities" and a "law clerk should not perform any official duties in any matter [when the] law clerk knows that . . . he or she has a personal bias or prejudice concerning a party . . . .").

[15]28 U.S.C. § 455(a) states that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

-18-

of the husband's firm (e) when the husband's conduct was not the source of the alleged malpractice, (f) when the husband was not a partner in the firm when the alleged malpractice took place, (g) when the husband was never served with a summons, (h) when the state case was dismissed with prejudice about six years before the federal case was commenced, (i) when no money judgment was entered against the law clerk's husband or his firm, and (j) when the parties to, and the issues involved in, the federal and state cases are unrelated.  <u>See</u>, <u>e.g.</u>, <u>In re Taylor</u>, 417 F.3d 649, 652-654 (7th Cir. 2005) (federal judge not disqualified to hear federal criminal case against defendant even though same defendant brought frivolous civil suit against same judge eight years earlier).[16]

Second, Wickenkamp's motion is frivolous, malicious, and filed for the improper purpose of impeding an award of fees and expenses to counsel for the defendants.[17]  I could easily impose sanctions.  The motion is totally lacking in factual and legal support.  <u>See</u>, <u>e.g.</u>, <u>Perkins v. General Motors Corp.</u>, 965 F.2d 597, 602 (8th Cir.) (upholding trial court's imposition of sanctions imposed on attorney who filed meritless disqualification motion based, in part, upon attack on judge's law clerk; lawyer had submitted motion without citing any legal authority even "'*suggesting*'" that disqualification was appropriate as result of judge's law clerk accepting position with firm that did some work for one of the parties) (italics in original), <u>cert.</u> <u>denied</u>, 506 U.S. 1020 (1992).

---

[16]I assume, without deciding, that under certain circumstances a law clerk's conflict of interest may be imputed to the judge such that the disqualification of the law clerk would also work a disqualification of the judge.  But there would be many qualifications to this disqualification-by-attribution idea.  However, I need not discuss those qualifications in this case because even if I assume that Judge Piester stands in the shoes of Ms. Zwart, there is no conflict of interest.

[17]Because of Wickenkamp's motion now pending before me, counsel for the defendants sought (filing 89) and received (filing 91) an extension of the deadline to file their fee application.

-19-

Although many could be provided, one example illustrates the baseless nature of the claim. Wickenkamp represents in her brief that "the filing of the malpractice lawsuit had the practical effect of creating a lien on real property owned by Cheryl Zwart." (Filing 87.) However, in Nebraska, where a civil suit seeks money, no lien can arise against someone's real estate until a judgment is entered in favor of the plaintiff. Neb. Rev. Stat. § 25-1504 (West 2006) (stating, in pertinent part, that a judgment lien arises as to real estate "only from the day on which such judgment[] [is] rendered.") This rule has been around for more than 100 years. See Farmers' Loan & Trust Co. v. Killinger, 65 N.W. 790, 791 (Neb. 1896) (judgment lien is dependent upon rendition of a judgment). Thus, Wickenkamp's assertion that the filing of the 1997 suit clouded the law clerk's title to real estate is sheer nonsense.

Despite the fact that I could award sanctions, I decline to do so. Additional sanctions litigation would cause too much delay. However, to the extent that Wickenkamp's motion has caused defense counsel to expend even more time or expense relating to their motion, that time and expense may be considered and compensated by Judge Piester.

## IV. CONCLUSION

Wickenkamp's motion will be denied. While her conduct cries out for both sanctions and discipline, at this time, I shall do nothing more than send a copy of this decision to Judge Piester and those disciplinary authorities who are already investigating Wickenkamp's conduct.

IT IS ORDERED that Wickenkamp's motion (filing 86) is denied. Judge Piester should resolve the attorney fee and expense issues associated with his earlier ruling and progress this case just like all the others.

-20-

June 28, 2006.                              BY THE COURT:

                                           s/ *Richard G. Kopf*
                                           United States District Judge