IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

```
JUDITH TRACKWELL,                    )
                                     )
               Plaintiff,            )     4:05 CV 3171
                                     )
     v.                              )
                                     )
                                     )
B & J PARTNERSHIP, LTD., CLAY F.     )     MEMORANDUM AND ORDER
SMITH, WILLIAM D. SMITH, A. JOYCE    )
SMITH, HOME SERVICES OF              )
NEBRASKA, INC., and CAPITOL          )
TITLE COMPANY,                       )
                                     )
               Defendants.           )
```

Before me are the defendants' applications for fees and expenses, filed pursuant to my earlier order awarding sanctions against plaintiff's counsel. That order, filing 81, granted the defendants' motion for sanctions and found that plaintiff's counsel, Mary C. Wickenkamp, had engaged in inappropriate and abusive actions in representing the plaintiff in this case. Relying on the inherent powers of the court, I concluded that defendants should be awarded their expenses and fees in bringing their motion to disqualify, filing 43, before the court. Wickenkamp's motion to vacate that order, filing 86, was denied; in his order denying the motion to vacate, Judge Kopf referred to me the issue of whether additional sanctions should be applied for the expenses caused by the filing of the motion to vacate. Memorandum and Order of June 28, 2006, Filing 94.[1]

---

[1] "...[T]o the extent that Wickenkamp's motion has caused defense counsel to expend even more time or expense relating to their motion, that time and expense may be considered and compensated by Judge Piester." Id. at 20.

Defendants have now filed their applications for fees, and have included time spent in relation to the motion to vacate. Shannon R. Harner, partner in the firm of Hoppe & Harner, LLP, has filed an application on behalf of HomeServices of Nebraska, Inc. in the total amount of $13,980.00. Andrew D. Strotman, partner in the firm of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., has filed an application on behalf of B & J Partnership, Ltd., Clay F. Smith, William D. Smith and A. Joyce Smith in the amount of $31,264.00.

Wickenkamp has filed a two-page response to the applications.[2] She does not contest any specific entries in the two applications, nor the hours spent, nor the hourly rates charged. She does not state that she cannot pay the amount requested. See Landscape Props., Inc. v. Whisenhunt, 127 F. 3d 678, 685 (8th Cir. 1997) (In contesting an award of fees under Fed. R. Civ. P. 11, it was attorney's obligation to raise inability to pay, as he was the one who held the information), citing White v. General Motors Corp., 908 F.2d 675, 685 (10th Cir. 1990) ("Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status"), cert. denied, 498 U.S. 1069 (1991). She does, however, submit that the total amount claimed is "unreasonable and excessive." Filing 104, p. 2. Her response recites that the court's award should be limited to what the court finds reasonable; should be limited to only those charges reasonably required by the sanctioned conduct; should be mitigated by opposing counsel's efforts to reduce legal costs; and should not exceed the scope of the original sanctions sought by the motion; however, it does not

---

[2] Plaintiff's request to consider the brief despite its being filed out of time will be granted.

identify any claimed hours or fees which in her view transgress these limits.  Id.

Wickenkamp also objects to the application of Harner, because she was not timely served with a copy of it.  Again, however, there is no information as to how, if at all, the lateness of her receiving a copy, thwarted or diminished her ability to respond.  I find the objection without merit.

Wickenkamp's response cites one case, Moline v. Trans Union, L.L.C. and Ford Motor Credit Co., 222 F.R.D. 346 (N. D. Ill. 2004).  That case is distinguishable in that it was a sanction award pursuant to 28 U.S.C. §1927, while this sanction order is made pursuant to the court's inherent authority.  See filing 81 at 38-49.  In granting the defendants' motion, I specifically found that Wickenkamp had harbored "bad faith" in representing her client, see filing 81 at 56-57, and had abused this court's rules and processes.  Id. at 49, 56-57.  Even so, as discussed below, some of the same considerations apply to awards under the court's inherent powers.

In assessing an award pursuant to the court's inherent powers, I must restrict the sanction to that "related concretely to redressing the harm" of the attorney's misconduct, and to that "necessary to deter" the attorney in the future.  Willhite v. Collins, 2006 WL 2389365 (8th Cir. Aug. 21, 2006) (affirming inherent power award of 50% of opposing parties' attorney fees, or $66,698.30, but reversing court's suspension of attorney from practice until he took and passed a law school course in federal jurisdiction); In re Kujawa, 270 F.3d 578, 582-83 (8th Cir. 2001)(upholding an inherent power award of reduced attorney fee of $66,656.33 but reversing an additional punitive sanction of $100,000).  The award should be "remedial," that is, it should compensate the opposing parties for the fees they incurred as a direct result of the attorney's unethical behavior.  Id.  See also

Nielson v. Trans World Airlines, Inc., 95 F.3d 701, 702 (8th Cir. 1996)(affirming award of $20,000 attorneys fees); Cf., Baycol Steering Committee v. Bayer Corp., 419 F. 3d. 794 (8th Cir. 2005)(reversing award of $50,000 payable to the *clerk of court* as not compensating affected *parties*).

Respecting Wickenkamp's broad challenge to the applications as "unreasonable and excessive," it is difficult to assess the argument in the absence of any challenges to specific entries of time or amounts. Overall, I find both the amounts of time claimed and the hourly rates charged to be reasonable, with only a few exceptions.

One might question the B & J defendants' choice of a "high-end" law firm to represent them; that is, one whose rates are probably at the top of the market in Lincoln and near the top of the market in Omaha. However, it must be remembered that at the time the Cline Williams firm and Strotman were hired, August 1, 2005, the complaint and an amended complaint, both seeking over $2 million, had been filed, and Wickenkamp was threatening to file a RICO complaint against them with a prayer for damages of between $7 million and $10 million. Filing 45, (Tavlin declaration) p. 2-4), and Exh. E thereto, (Letter from Wickenkamp to A. Joyce Smith, July 14, 2005). In addition, Wickenkamp had refused to communicate with the defendants' chosen counsel, thus forcing them to hire a new attorney. Under these circumstances one can hardly fault them for approaching a law firm of high professional standing and correspondingly high hourly fees. In addition, Strotman's normal hourly fee is $10 higher than what he claims in the application. I do not find the hourly rates charged by Strotman and his firm excessive.

Nor do I find the hours expended unreasonable. Although Wickenkamp seems to argue that the time frame charged is too broad, noting that the case was stayed for part of the applicable period,

the hours charged for responding to the plaintiff's motion for stay (2.3 hours for Strotman and .5 hours for Harner) and those during the stay (.3 hours for Strotman and no hours for Harner), are minor and were necessary.  Except as noted below, I find the hours spent to have been necessary to protect defendants from Wickenkamp's actions.

I also do not find it unreasonable to count hours attributable to analysis of plaintiff's proposed third amended complaint.[3]  I agree with Strotman's assessment that the motion for leave to amend complaint and add parties (filing 36) and the motion to disqualify were interrelated.  In fact, the motion to disqualify was the defendants' response to the motion to amend, and defendants filed the same brief and evidence in opposition to the latter and in support of the former.  Filings 44, 45.

I observe that some of the time claimed post-dates the filing of the motion to disqualify and the briefs strictly attributable to that filing.  However, all the additional hours claimed were for matters directly related to the motion to disqualify, and

---

[3] Plaintiff filed her first complaint on July 18, 2005.  An amended complaint was filed July 28, 2005.  A second amended complaint adding defendants was filed, without leave of court, on July 29, 2005.  A third amended complaint adding more parties was filed, without leave of court, on August 8, 2005; this complaint was stricken by the court on August 10, 2005.  Plaintiff filed a motion for leave to file the third amended complaint on August 9, 2005.  Before that motion was resolved, Plaintiff filed a motion for leave to file an amended motion for leave to file the third amended complaint.  The amended motion for leave to file third amended complaint was finally filed on October 19, 2005. Defendants responded to that motion with the motion to disqualify, filed on November 9, 2005.  The amended motion for leave to file third amended complaint was denied *sua sponte* when Wickenkamp withdrew, without prejudice to refiling by new counsel.  Plaintiff has since given notice she will proceed *pro se* and on August 11, 2006 filed another motion for leave to file third amended complaint, filing 103, which remains pending.

defendants were bound to respond to the plaintiff's filings.  In addition, defendants' attorneys have not included some time they spent on related but peripheral matters.  See, e.g., Strotman Declaration, filing 97, para. 21.

     I have scrutinized the individual entries in the applications carefully.  With only one categorical exception, I find them reasonable both in number of hours and hourly fees charged.  The time spent on preparing defendants' response to the motion to vacate was excessive.  By my tally, Strotman spent 6.2 hours on this matter, and Adams spent 12.4 hours.  A Cline Williams law clerk spent 4.9 hours.  Harner spent 5.8 hours.  This combined effort produced a brief which is seven pages of argument.  While the brief is excellent, the time charged includes a good deal of what appears to be duplicative effort; it could have been written in much less time.  I shall reduce the compensated hours accordingly.[4]

     Granting the attorneys' remaining claims, that reduction leaves a total award in the amount of 42,039.50.  At first blush such an attorneys fee award does seem excessive and perhaps more than necessary to deter future misdeeds by Wickenkamp.  However, there is no evidence before the court to that effect.  Nor, importantly, is there any evidence indicating that this amount is anything less than the amount actually billed to these defendants for these services; that is, the amount necessary to remedy the wrongs.  Further, no reason is apparent to justify reducing the fees claimed substantially so as to make defense counsel, rather than Wickenkamp, bear the financial consequences of her actions.  I also note that the fee applications are limited to services rendered after the filing of the second amended complaint, even though some of the sanctionable conduct occurred before that date.

---

     [4] Strotman's compensated hours are reduced to 4.5; Adams,' to 3.0; and Harner's, to 3.5.

See Filing 81.  Defendants' counsel have exercised judgment in reducing their applications accordingly.  I conclude that this award represents the fair value of the attorneys' services to their clients in this case, is directly related to the sanctionable conduct, is necessary to remedy the harm visited on the defendants, and is reasonable given the severity of Wickenkamp's actions and the costs to the defendants occasioned thereby.  Nevertheless, because the award is so large and would be a tremendous financial burden on any attorney,[5] I shall reduce it further (approximately 20%), but not substantially, because Wickenkamp's conduct was reprehensible and antithetical to the legal profession and the ordered resolution of civil disputes.

    IT THEREFORE HEREBY IS ORDERED:

    1.  Plaintiff's request to accept the responsive brief out of time, filing 104, is granted.

    2.  The applications for attorneys fees, filings 97 and 98, are each granted in part.  Mary C. Wickenkamp shall pay to defendants B & J Partnership, Ltd., Clay F. Smith, William D. Smith, and A. Joyce Smith, through counsel, the sum of $22,769.00; Mary C. Wickenkamp shall pay to defendant HomeServices of Nebraska, Inc., through counsel, the sum of $10,862.00.  Once this order is final, the clerk shall enter judgment thereon in favor of the defendants and against Mary C. Wickenkamp personally.

    DATED August 25, 2006

    BY THE COURT:

    s/ *David L. Piester*
    United States Magistrate Judge

---

[5] Although it may pale in comparison to the student loan obligations of many newly admitted attorneys.